1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  KATHRYN HAUN (DCBN 484131)
   WILLIAM FRENTZEN (LABN 24421)
5  Assistant United States Attorneys

6      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
7      Telephone: (415) 436-7200
       FAX: (415) 436-7234
8      Kathryn.haun@usdoj.gov
       William.frentzen@usdoj.gov
9
   RAYMOND N. HULSER (MABN 551350)
10 Acting Chief, Public Integrity Section

11 RICHARD B. EVANS (DCBN 441494)
   Trial Attorney
12
       1400 New York Avenue, N.W.
13     Washington, D.C. 20005
       Telephone: (202) 353-7760
14     Richard.B.Evans@usdoj.gov

15 Attorneys for United States of America

16                  UNITED STATES DISTRICT COURT
17                NORTHERN DISTRICT OF CALIFORNIA
18
                      SAN FRANCISCO DIVISION
19

20 UNITED STATES OF AMERICA,            )  **REDACTED UNITED STATES' MOTION IN**
                                        )  **SUPPORT OF DETENTION**
21     v.                               )
                                        )
22 CARL M. FORCE IV and                 )  **3-15-70370 MEJ**
   SHAUN W. BRIDGES,                    )
23                                      )
           Defendants.                  )
24                                      )
                                        )
25 _____)

26
           Come now the United States through undersigned counsel and submits the instant Motion
27
28 in Support of defendant Carl M. FORCE's continued detention.  Following a detention hearing

GOVERNMENT'S MOTION IN SUPPORT OF DETENTION

1  conducted on April 2, 2015, in the District of Maryland where the defendant was apprehended,

2  the Honorable Timothy J. Sullivan ordered FORCE detained. According to Judge Sullivan's

3
   Order of Detention, there was "sufficient evidence for the Court to conclude that the defendant,
4
5  by a preponderance of the evidence, that the defendant is a serious flight risk and has the ability

6  and skill to obstruct justice ... [such that] [t]here are presently no conditions and/or combination

7  of conditions that can be established to reasonably assure that the defendant will not flee/to

8
   mitigate the risk of non-appearance, or to reasonably assure that the defendant will not obstruct
9
10 justice." See Exhibit A (Order of Detention).

11      The government understands from current defense counsel that FORCE wishes to have

12 the matter put on calendar for another detention hearing before this Court on Wednesday, April

13
   29. The government seeks the defendant's continued detention for the reasons it advanced
14
15 before Judge Sullivan and contained in Exhibit B hereto. (Redacted Motion In Support of

16 Detention). For those reasons and others the government will be prepared to address at the

17 hearing, the government seeks the defendant's continued detention pending trial or resolution of

18
   the case and requests this Court order the defendant detained.
19

20
21 DATED: April 27, 2015                          Respectfully submitted,

22                                                MELINDA HAAG
                                                  United States Attorney
23
                                                  /s/
24
                                                  _____
                                                  KATHRYN HAUN
25                                                WILLIAM FRENTZEN
                                                  Assistant United States Attorneys
26
                                                  RICHARD EVANS
27                                                Trial Attorney

28

GOVERNMENT'S MOTION IN SUPPORT OF DETENTION

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

                 \*

      vs.                         Case No.    **15-0656-TJS**

                 \*

    **CARL FORCE**

                 \*

                  \*\*\*\*\*\*

### ORDER OF DETENTION (18 U.S.C. § 3142)

        In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I have concluded that the following facts require the detention of the defendant pending the trial of this case.

#### PART I: FINDINGS OF FACT

☒   (1)  This is a case in which the government may properly seek detention.

☒   (2)  The defendant is charged under:  18 U.S.C. §641; 18 U.S.C. §1343; 18 U.S.C. §1956; 18 U.S.C. §208.

☒   (3)  The maximum term of imprisonment, if convicted, is: 20 years BOP.

☒   (4)  Based on the government's proffer there is probable cause to believe that the defendant committed the offense(s) charged.

          ☐   The government is entitled to a presumption under § 3142 (e) **[describe in Part II]**.

          ☐   The defendant has failed to rebut this presumption [as to flight risk] and [as to danger].

☒   (5)  I find, by a preponderance of the evidence, from the information produced at the hearing that there is a serious risk that the defendant will not appear.

☐   (6)  I find, by clear and convincing evidence, from the information produced at the hearing that the defendant poses a risk to the safety of other persons and the community.

☒   (7)  I find by clear and convincing evidence that there is no condition or combination of conditions which will reasonably assure the defendant's presence at trial or as otherwise required and community safety.

#### PART II: WRITTEN STATEMENT OF ADDITIONAL REASONS FOR DETENTION

The government moves for detention under 18 U.S.C. § 3142(e)(2) arguing that there is a serious risk that the defendant will flee and that there is a serious risk that the defendant will obstruct justice. The defendant contends that conditions of release are appropriate. The nature of the charged offenses involve theft and fraud by the defendant while acting in his professional capacity as a DEA Special Agent. The government has proffered sufficient evidence for the Court to conclude, by a preponderance of the evidence, that the defendant is a serious flight risk and has the ability and skill to obstruct justice. The government has not proffered sufficient evidence for the Court to conclude that the defendant, by clear and convincing evidence, is a danger to others and the community. I reach this conclusion by weighing all of the factors set forth in 18 U.S.C. § 3142(f). There are presently no conditions and/or combination of conditions that can be established to reasonably assure that the defendant will not flee/to mitigate the risk of non-appearance, or to reasonably assure that the defendant will not obstruct justice.

The defendant is committed to the custody of the Attorney General or his/her designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the U.S. Marshal shall deliver the defendant for the purpose of an appearance in connection with a court proceeding.

April 2, 2015
_____
Date

                     _мммᴑммммм_
                     Timothy J. Sullivan
                     United States Magistrate Judge

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
### BALTIMORE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **CRIMINAL NO. 15-0656 TJS** |
| | ) | |
| v. | ) | |
| | ) | |
| CARL M. FORCE IV, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## UNITED STATES' MOTION FOR PRETRIAL DETENTION

COMES NOW, the United States by and through its undersigned counsel and respectfully moves this Court to order Defendant Carl M. Force IV detained pending trial, pursuant to Title 18, United States Code, Section 3142. The grounds for the Government's motion, as described in detail below, are that: 1) there is a serious risk that the Defendant will flee, or will obstruct justice if he is not detained pending trial, 18 U.S.C. §§ 3142(f)(2)(A) and (B), and 2) that he poses a danger to the community. Accordingly, there is no combination of conditions that will "reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

As described more fully below, Force was arrested on Friday, March 27, 2015, pursuant to a warrant issued by the United States District Court for the Northern District of California (NDCA), charging Force with multiple serious felonies related to his previous work as a federal agent as part of the Baltimore Silk Road Task Force. For the reasons stated in this Motion, Force should be detained pending transportation to, and trial of this matter in the NDCA.

## I.    Statement of Facts

### A.    Background Information on Carl M. Force IV

Defendant Force is 46 years old, and maintains a residence in Baltimore, Maryland, with his wife and three minor children. Force is a United States citizen and holds a United States passport, which was seized during the search of his vehicle on March 27, 2015.[1] Prior to his abrupt resignation in May 2014, Force had been a Special Agent with the Drug Enforcement Administration (DEA) for nearly fifteen years and, most recently, had been working on the Baltimore Silk Road Task Force. As a DEA Special Agent, Force received extensive training concerning law enforcement investigations, and he is intimately familiar with the methods the government uses to conduct physical and electronic surveillance and to trace financial assets. During his years with the DEA, Force also received extensive firearms training and, until the day of his resignation, he possessed a DEA-issued firearm.

Force was arrested on Friday, March 27, 2015 at approximately 7:30 p.m. when he returned to his place of residence in Baltimore, MD. Following his arrest, a consent search was conducted on Force's car at which time agents recovered a concealed, fully loaded hand gun (a 9mm Taurus) with extra ammunition, his passport, and ten (10) $500 blank money orders. A subsequent check of law enforcement databases revealed that Force did not have a concealed-carry permit in Maryland for the firearm that was seized from his vehicle. The search of Force's home revealed four additional fully loaded hand guns positioned throughout the house in easily accessible locations as well as an unloaded shotgun. Force also maintained approximately 650

---

[1] The passport recovered at the time of the arrest was expired; however, agents have since learned that Force maintains another passport which is still current.

U.S. v. Force, Case No. 15-0656 TJS
United States' Motion for Pretrial Detention            2

rounds of ammunition for the subject weapons.[2]

The investigation to date has revealed that during the last two years Force has exercised dominion and control over hundreds of thousands of dollars, most of which were obtained as a result of the illegal conduct discussed below. During that time Force received numerous international wire transfers into his U.S. bank accounts, and he withdrew large quantities of cash as well. Bank records also reflect that in May 2014, Force wired approximately $235,000 to an account in Panama, which was subsequently transferred to a digital currency exchange company believed to be operating out of Eastern Europe and/or the former Soviet Union.[3] As such, financial records indicate that Force has access to hundreds of thousands of dollars both in the United States and abroad.

Force also has significant experience with using aliases and has used the alias "Shannon S. Curran" in the past.[4] Force also used other aliases as part of his work on the Silk Road Task Force, including, as described below, aliases that he did not make known to other members of the task force. Indeed, in April 2014, Force used the alias "Eladio Guzman" in an unsuccessful attempt to retrieve more than $200,000 from one of his accounts at a digital currency exchange based in Europe.

Force also has a familiarity with the so-called "dark net" sites and the "Deep Web" and is familiar with techniques as to how to browse the internet and remain undetected. For this reason, he could certainly procure additional identities and/or weapons from any number of successor sites that have replaced Silk Road or Silk Road 2.0. He could also obtain computer access to

---

[2] Pursuant to an agreement with Force's defense counsel, Force's wife voluntarily surrendered the weapons and ammunition found in the house to federal agents on March 31, 2015, pending the outcome of this case.

[3] This digital currency exchange is known to be non-compliant with U.S. laws and unresponsive to legal process from the U.S. authorities, and thus it is not possible to track the proceeds Force has or had at that exchange.

[4] Force listed this alias on his 2004 SF 86, which is a questionnaire used for background investigations for national security positions.

move funds.

Additionally, Force, as part of his work on the Silk Road Task Force, was familiar with methods for fleeing the country to avoid detection and apprehension by the authorities. To that end, Force created a document entitled "el plan", which detailed steps for leaving the United States undetected with a final destination of Algeria. Although this plan may have been created for DPR as part of Force's undercover work with the Silk Road Task Force, it is evidence that Force has thought about these issues and is familiar with ways of leaving the U.S. undetected. *See* Attachment A.

### B.     *The NDCA Case*

Force appears before this Court on a Complaint filed in the NDCA, charging him with, among other things, theft of government property, wire fraud, and money laundering. The charges in the Complaint stem from his conduct as a Special Agent for the DEA on the Baltimore Silk Road Task Force from in or about February 2012 to in or about April 2014.

Beginning in 2012, the government initiated multiple investigations into the Silk Road marketplace, an underground black market that allowed vendors and buyers to conduct illegal transactions over the internet. One of these investigations was conducted in the Southern District of New York, and another was conducted out of Baltimore in the District of Maryland. These two investigations were conducted independently of each other. Force was assigned to the Baltimore investigation.

Throughout 2012 and 2013, Force had significant responsibilities related to Baltimore's investigation and was the lead undercover agent in communication with an individual known as "Dread Pirate Roberts" (DPR), the owner, administrator and operator of the Silk Road website. DPR was later identified as Ross Ulbricht, who was subsequently charged in the Southern District of New York with various crimes related to Silk Road. Ulbricht was convicted at trial in February 2015. In his capacity as a member of the Baltimore Silk Road Task Force, Force had significant exposure to and developed expertise in the digital currency known as Bitcoin.

As detailed in the Complaint filed in the NDCA, Force abused his position as a federal agent and engaged in a scheme to defraud a variety of third parties, the public, and the government, all for his own financial enrichment. Specifically, the investigation has revealed among other things that:

a.  Force created certain fictitious personas -- that were not officially sanctioned --to communicate with DPR, the target of Force's investigation. Using one of these personas, Force sought to extort DPR by seeking monetary payment, offering in exchange not to provide the government with certain information if DPR paid $250,000;

b.  Force acted outside the scope of his official role on the Baltimore Silk Road Task Force and created a fictitious persona named "French Maid." Operating as "French Maid," Force fraudulently represented to DPR certain information concerning "French Maid's" true identity and offered to sell DPR information about the government's investigation into Silk Road in exchange for approximately $100,000 worth of bitcoin, which DPR paid and Force deposited into his own personal accounts;

c.  Force stole and converted to his own personal use a sizeable amount of bitcoins that DPR sent to Force in Force's official undercover capacity, and rather than

turn those bitcoin over to the government, Force deposited them into his own personal accounts;

d.    FORCE engaged in a series of complex transactions between various Bitcoin accounts (known as Bitcoin wallets), his personal digital currency accounts, and his personal bank accounts, including a $235,000 wire to an overseas account in Panama, all in an effort to launder and conceal the true source of the ill-gotten proceeds;

e.    Force used his official position as a DEA agent to illegally run criminal history checks on individuals for the benefit of a third-party digital currency exchange company, CoinMKT, in which Force had personally invested approximately $110,000 worth of bitcoin;

f.    Force functioned as the de facto Chief Compliance Officer for CoinMKT all the while employed as a DEA agent, even allowing himself to be featured in CoinMKT's "pitch decks" to venture capital investors and allowing himself to be listed as CoinMKT's anti-money laundering and/or compliance officer in order to benefit CoinMKT (a company in which Force had invested);

g.    Force improperly directed CoinMKT to freeze one of its individual customer's accounts containing a large amount of digital currency, worth approximately $297,000, even though he lacked a sufficient legal basis on which to do so, and Force then illegally seized those funds and transferred them into his own personal account; and

h.    Force used his supervisor's signature stamp, without authorization, on an official U.S. Department of Justice administrative subpoena and sent the subpoena to a payments company, Venmo, directing the company to unfreeze his own personal account, which had been previously frozen due to certain suspicious activity. Force then sought to conceal evidence of his improper use of an official subpoena

by directing the company not to contact the DEA and attempting to destroy copies of the subpoena. When the company did not comply, Force asked another agent on the Baltimore Silk Road Task Force to collaborate with him on seizing that company's bank accounts.

## II.    Applicable Law

A defendant may be detained pending trial only after a finding by a judicial officer, following a hearing held pursuant to 18 U.S.C. § 3142(f), that "that no condition or combination of conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e). The government can move to have a defendant detained pending trial in a case that involves a serious risk that the defendant will flee, or that he will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2)(A) and (B). The government bears the burden of proof at the hearing; the government must prove, by a preponderance of the evidence, that the defendant presents a risk of flight or obstruction of justice, and that there are no conditions or combination of conditions of release that will ensure his appearance in court. 18 U.S.C. § 3142(f); *United States v. Cisneros*, 328 F.3d 610, 616-17 (10th Cir. 2003); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).

In determining whether there are any conditions of release that will reasonably assure the appearance of the defendant, the court must consider the following factors pursuant to 18 U.S.C. § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

As this Court has explained, "The Bail Reform Act of 1984 ('the Act'), 18 U.S.C. §§ 3141 et seq., authorizes a court to order a defendant's detention pending trial in certain circumstances if 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . .' 18 U.S.C. § 3142(e)." *United States v. Selby*, 333 F. Supp. 2d 367, 368 (D. Md. 2004). This Court has the discretion under the Act to find the government has met its burden through an unsworn proffer. *See United States v. Hammond*, 44 F. Supp. 2d 743, 745-46 (D. Md. 1999) (collecting cases); *see also United States v. Cooper*, 2008 WL 2331051 at * 1 (D. Md. 2008) ("For almost a decade it has been routine procedure in this District for the government to present proffers at detention hearings and, in the rare circumstance where the Court has found a proffer inadequate to support the government's position, the Court has so advised the government, granted a brief postponement to allow the government to locate its witnesses, and then heard live testimony on problematic questions. . . . This practice is efficient in that it conserves scarce public resources by not requiring the presence of busy law enforcement officers at every detention hearing while at the same time leaving the Court the option of requiring their testimony

when confronted with questions incapable of resolution without the direct and cross examination of a live witness.").

## III.   Argument

The facts before the Court support a finding on a preponderance of the evidence that Force is a flight risk and may obstruct or attempt to obstruct justice if he is not detained pending trial, and there are no conditions of release that will reasonably assure his appearance.  18 U.S.C. § 3142(f)(2)(A) & (B).  As discussed in the Complaint and the Statement of Facts in this Motion, Force's flagrant disregard for rules and legal requirements make it impossible for this Court to ensure that he is complying with any conditions of release, short of detaining him.  Moreover, the safety of the community dictates that he be detained pending trial.

### A.   *The Defendant Is a Flight Risk, and May Obstruct or Attempt to Obstruct Justice*

The facts of this case show by a preponderance of the evidence that Force is a flight risk, and may obstruct or attempt to obstruct justice, if he is not detained pending trial.  As indicated above, at the time Force was arrested he was in possession of what could only be described as a "go bag" containing an unlicensed and fully loaded 9mm Taurus hand gun, extra ammunition, his passport, and $5,000 worth of blank money orders, which could be converted into cash at any time.  Moreover, the money orders are just a small fraction of the money that Force has available to him given the hundreds of thousands of dollars which he has in accounts both in the United States and abroad.  And these are just the accounts of which the government is presently aware; it may well be that Force had additional accounts or reserves that remain as of yet undiscovered. *See United States v. Stewart*, 19 Fed.Appx. 46, 49 (4th Cir. 2001) (concluding that defendant posed a substantial risk of flight considering, among other things, his significant assets obtained through a Ponzi Scheme, the transfer of those assets to offshore bank accounts and his use of

aliases); *see also United States v. Anderson*, 384 F. Supp 2d 32, 36 (D.D.C. 2005 (determining that defendant's substantial overseas assets and international connections warranted his classification as a flight risk and his pretrial detention).

In addition to his apparent preparations and the economic means at his disposal, Force also has the knowledge on how to flee the country. As evidenced by the "el plan" that he created, Force actively considered this subject as part of his undercover activities on the Silk Road Task Force and may choose to use this or a similar plan for himself. Moreover, Force has experience using aliases both in his personal and professional life. Indeed, one of the services that he was purportedly going to provide to DPR was the provision of fake driver's licenses. It is unknown whether Force ever obtained such fake identification for himself should he ever need to flee the United States.

Moreover, Force's conduct during the current investigation demonstrates that he has no regard for the criminal justice system and its workings—which he was sworn to protect as a trained law enforcement officer. In May 2014, Force sat for an interview with federal agents and prosecutors pursuant to a proffer letter in which he agreed to answer any and all questions truthfully; however, as the affidavit in support of the instant Complaint reveals, he continually lied to federal agents and prosecutors, which had the effect of obstructing the investigation into his conduct. Now that he stands accused of multiple serious federal felony charges, which carry severe cumulative penalties, Force will be doubly motivated to attempt to obstruct the case against him in whatever way he can—and almost certainly by seeking to further hide a sizeable amount of assets that are currently missing. It should also be noted that after Bitstamp froze his account, and likely by the time that Force knew he was under investigation, he emailed Bitstamp requesting that it destroy documentation relating to his account and account history, no doubt in

a deliberate attempt to minimize the evidence available in any future investigation.

**B.**     *All of the § 3142(g) Factors Weigh in Favor of Detention*

Once the government has demonstrated by a preponderance of the evidence that the defendant is a flight risk, or will obstruct or attempt to obstruct justice, the Court must determine what, if any, conditions of release will reasonably assure the appearance of the defendant. To prevail on a motion for pretrial detention, the government must prove by a preponderance of the evidence that there are no conditions that will reasonably assure the defendant's appearance. All four of the factors the Court must consider in § 3142(g) weigh in favor of detaining the Defendant.

1.  The Nature and Circumstances of the Offense Charged

Force is charged in this case with among other things, theft of government property, wire fraud and money laundering, conviction on which will carry significant sentences. The prospect of a lengthy prison sentence is daunting for any defendant, but particularly so for a former law enforcement officer. Force faces a statutory maximum sentence of 20.years in prison on the wire fraud charges as well as the money laundering charges. The statutory maximum for theft of government property is 10 years. If convicted, Force could spend decades behind bars, which is more than enough reason to attempt to flee prosecution.

Moreover, Force's crimes were all about deception – deception of the Baltimore Silk Road Task Force, deception of DPR, deception of CoinMKT and likely, of his family, just to name a few. As detailed in the Complaint, Force took great pains to use encrypted and otherwise untraceable means of communication and his crimes involved complex financial transactions that were difficult to trace. At the end of the day, Force's crimes reveal that he is an expert liar, and that he can not be trusted to be out in the community pending trial.

### 2. Weight of the Evidence Against Force

The evidence against Force is substantial; a review of the Complaint and the Statement of Facts above makes that clear. The Government has cited only a portion of the substantial documentary and other evidence against Force. In addition to that contained in the affidavit in support of the Complaint, the United States has obtained significant email and other documentary evidence, including financial records evidencing Force's illegal conduct.

### 3. History and Characteristics of the Person

For this factor, too, there is overwhelming support in favor of detention. As is noted above, at the time Force was arrested, he was in possession of an unlicensed, fully-loaded 9mm hand gun with extra ammunition, his passport, and $5,000 in blank money orders – everything he would need to flee the jurisdiction. Additionally, a search of his house revealed four more fully-loaded hand guns positioned throughout the house, an unloaded shotgun and approximately 650 rounds of ammunition.  Force also has a prior arrest related to mishandling a firearm according to his 2004 SF 86, see FN 2, and a conviction for DUI.

In his work for the DEA, Force was tasked with communicating with the target of the Baltimore Silk Road Investigation in an undercover capacity in which he offered to provide the target with false identification. Moreover, Force also used false identification documents which he had obtained as part of his undercover operations, to improperly seek to have a personal account at a payments company, Venmo, unfrozen. As indicated above, Force has used aliases in the past and it is unknown whether he obtained additional false identification should he ever need to flee the country. However, given his familiarity with the TOR network and other dark net sites, Force has the knowledge to obtain such false identification should he decide to do so.

Additionally, the United States has learned that Force's wife has indicated that she would not agree to be the custodian for Force should he be released pending trial. The United States believes that Force has no other family within the state of Maryland to take on this responsibility which militates further toward a finding of pretrial detention. Additionally, Force has no known ties to the NDCA.

4. Nature and Seriousness of the Danger to Any Person or the Community

As indicated above, until his arrest Force had access to numerous firearms and hundreds of rounds of ammunition, some of which he kept in a "go bag" within his car. Although these weapons have been secured, there is no telling whether Force has any additional weapons hidden elsewhere to which he might easily gain access. Moreover, Force has knowledge from his work as an undercover DEA officer on how to obtain weapons via dark net sites on the web or on the streets of Baltimore.

The matter is also complicated by the fact that the charges against Force are pending not in Maryland, but in the NDCA, which will require Force to travel across the country to answer to them. For these reasons, Force poses a potential danger to the community should he be released pending trial.

C. *There Are No Conditions of Release That Will Reasonably Assure the Appearance of the Defendant.*

For all the reasons stated above, there is no combination of conditions of release that will ensure Defendant Force's appearance in the NDCA. The Court could not trust that GPS monitoring, such as an ankle bracelet, would be effective. An ankle bracelet can be removed and would not prevent Force from attempting to obstruct the investigation by transferring additional funds overseas – which he would be able to do through electronic means from the comfort of his own home. Removing himself from the United States to a country that does not extradite to the United States would be a minor task for someone experienced in the use law enforcement tactics, aliases and with significant economic resources.

In this case, the totality of the circumstances and the facts before the Court regarding Force's illegal possession of a concealed weapon along with his passport and $5,000 worth of blank money orders, familiarity with methods for fleeing the United States undetected and access to substantial wealth both in the United States and abroad, as well as all the other reasons stated in this Motion, strongly weigh in favor of detaining the Defendant.

## IV.   Conclusion

WHEREFORE, for the reasons stated above, the United States moves this Court to enter an Order of Detention against Force, pending trial in this matter.

Respectfully submitted this 1st day of April, 2015.

Raymond N. Hulser
Acting Chief

____//s//_____
Richard B. Evans
Public Integrity Section

Criminal Division
U.S. Department of Justice
1400 New York Ave. NW
Washington, DC 20530
(202) 514-1412

## Certificate of Service

I HEREBY CERTIFY that this 1st day of April, 2015 an electronic copy of the foregoing was
served via the Court's ECF system on opposing counsel, Ivan Bates, Esq.  A copy has been
forwarded to Pretrial Services.

_____

Barbara S. Sale
Assistant United States Attorney

# ATTACHMENT A

**From:**          Force, Carl M. (DEA-US)
**Sent:**          Thursday, April 11, 2013 7:52 AM
**To:**            Herring, Justin (USAMD); McFarland, Michael T (Mike.T.McFarland@ice.dhs.gov);
                   LeCompte, Melinda M (Melinda.M.LeCompte@ice.dhs.gov)
**Subject:**       Emailing: el plan
**Attachments:**   el plan.docx


Your message is ready to be sent with the following file or link attachments:

el plan


Note: To protect against computer viruses, e-mail programs may prevent sending or receiving certain types of file
attachments.  Check your e-mail security settings to determine how attachments are handled.

1

## EXIT FROM STATEs

- taxi to Cruise dock (2001 McComac Street, 21230); pay cash

- constantly check Cruise Schedule at http://www.baltimorecruiseguide.com/cruises.html
- pay cash for cruise to Caribbean
- get off in Old San Juan, Puerto Rico
- pay cash for taxi to Avis at 1050 Ashford Avenue, Condado (787-721-4499)
- pay cash for rental car; drive to Mayaguez Ferry
- pay cash one-way trip to Santo Domingo

## DOMINICAN REPUBLIC

- pay pesos for taxi to Las Americas airport
- buy plane ticket (pesos); Copa Airlines to Panama City

## PANAMA

- pay cash for ticket to Casablanca, Morocco (ECP, PAM, PFN)

## MOROCCO

- pay dirhams for car; drive to Algiers, Alegeria

## FINAL DESTINATION / ALEGERIA

travel pack: driver's license; credit card; health insurance card; voter id; social security card; $20,000 American; 130,000 Dirhams; 650,000 Domincan pesos; suitcase 4 days worth of clothes; toiletries