AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☒ INFORMATION  ☐ INDICTMENT  ☐ SUPERSEDING

**OFFENSE CHARGED**

18 U.S.C. § 1951 Extortion
18 U.S.C. § 1956 Money Laundering
18 U.S.C. § 1512 Obstruction of Justice

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: Maximum penalties per each count above: 20 years imprisonment; $250,000 fine/ twice gross gain; 3 years supervised release; restitution and forfeiture; $100 special assessment all per count

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**DEFENDANT - U.S**
▶ CARL M. FORCE IV

DISTRICT COURT NUMBER
15 CR 319 RS

FILED
JUN 22 2015
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**DEFENDANT**

**IS NOT IN CUSTODY**
1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☒ On this charge
5) ☐ On another conviction  } ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No  } If "Yes" give date filed ____

DATE OF ARREST ▶ Month/Day/Year  March 27, 2015
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year  March 30, 2015

☐ This report amends AO 257 previously submitted

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)
FBI S/A Ablett, DOJ OIG S/A Cunningham, IRS S/A Gambaryan

☐ person is awaiting trial in another Federal or State Court, give name of court _____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District _____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
} 3-15-70370 MEJ

Name and Office of Person Furnishing Information on this form  MELINDA HAAG
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)  AUSA KATHRYN HAUN

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☒ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT   Bail Amount: _____

If Summons, complete following:
☒ Arraignment  ☒ Initial Appearance
Defendant Address:
c/o Ivan Bates, Esq. Counsel for Defendant

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: July 1, 2015 9:30 a.m.   Before Judge: Duty magistrate

Comments: Counsel have filed a stipulation and proposed order for change of plea 7/1/15 at 2 pm before Judge Seeborg

1  MELINDA HAAG (CABN 132612)
   United States Attorney

FILED

JUN 22 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) CRIMINAL NO.  15 CR 319 RS |
|---|---|
| Plaintiff, | ) |
| v. | ) VIOLATIONS: |
|  | ) 18 U.S.C. § 1956 – Money Laundering; |
|  | ) 18 U.S.C. § 1512 – Obstruction of Justice; |
| CARL M. FORCE IV, | ) 18 U.S.C. §  1951 – Extortion; |
| a/k/a "French Maid," | ) 18 U.S.C. §§ 982(a)(1); 981(a)(1)(C); and 28 U.S.C. § 2461(c) – Forfeiture. |
| Defendant. | ) |

## INFORMATION

The United States Attorney charges:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Information, with all dates being approximate and all date ranges both approximate and inclusive:

1. Defendant CARL M. FORCE IV ("FORCE") was a Special Agent with the Drug Enforcement Administration ("DEA") assigned to the Baltimore Silk Road Task Force.

2. Silk Road was a website where illegal goods were posted for sale, including narcotics. Silk Road was only accessible through The Onion Router, or "TOR," network, a network designed to

conceal the true IP addresses of computers on the network and the users' identities. The only accepted form of payment on Silk Road was Bitcoin.

3. Bitcoin was a form of virtual currency that existed online. The value of Bitcoin fluctuated widely during 2013 and 2014. Bitcoin could be negotiated through exchanges. Among those exchanges were Bitstamp, CampBX, and CoinMKT.

4. All Bitcoin transactions were recorded on the block chain, which is a distributed public ledger that kept track of all Bitcoin transactions, incoming and outgoing, and updated regularly. The block chain recorded every Bitcoin address that received a bitcoin and maintained records of every transaction and all known balances of each Bitcoin address.

5. The Baltimore Silk Road Task Force was formed jointly by several federal law enforcement agencies, including the DEA, and designed to investigate and apprehend vendors, buyers, administrators, and the manager of Silk Road, including the head of Silk Road, R.U., a/k/a "Dread Pirate Roberts," a/k/a "DPR" (hereafter "R.U."). A federal grand jury for the District of Maryland, based in Baltimore, Maryland, and in connection with the Baltimore Silk Road Task Force investigation, conducted investigation into the activities of R.U., vendors, buyers, and administrators, and it constituted an official proceeding.

6. FORCE was assigned to act in an undercover capacity in an effort to locate, identify, and prosecute targets of the Baltimore Silk Road Task Force, including R.U., and other vendors, buyers, and administrators on Silk Road. Force created an undercover persona on Silk Road using the moniker "Nob" to communicate with R.U. and posed as a large scale drug dealer with the ability to hire people to commit murder. A Grand Jury for the Northern District of California, based in San Francisco, California, conducted investigation into the activities of FORCE and others, and it, too, constituted an official proceeding.

7. Force memorialized some, but not all, of the communications between R.U. and FORCE (Nob) in FORCE's official case file, in official reports of the DEA investigation known as DEA 6s, and on FORCE's official computers.

CRIMINAL INFORMATION

8. FORCE encrypted certain of his communications with R.U. using PGP, an encryption algorithm that allowed its users to send encrypted conversations through messaging or chat services.

9. With PGP, a public key encrypted a message for a specific user to read, and a private key was used by the recipient to decrypt the message. In addition to needing a private key to decrypt a message, a user had to possess a unique password established at the time of creation to decrypt or sign a message. FORCE failed to document any of the private PGP keys or passwords needed to decrypt Nob's encrypted communications with DPR. Nor did FORCE provide these private PGP keys to the prosecutor on the Baltimore Silk Road case or to those in his chain-of-command.

### FORCE's Theft Of 525 Bitcoin Using His Official Undercover Identity

10. In his communications with R.U., FORCE, operating as "Nob," pretended he had sensitive law enforcement information that he would provide to R.U., in exchange for payment, including that he had access to a corrupt government employee, fictionally named "Kevin," on the government's Silk Road investigation and simultaneously on Nob's payroll, who would feed Nob information about law enforcement's investigation into the Silk Road.

11. R.U. discussed a payment to FORCE on August 1, 2013 for 525 bitcoins, worth approximately $50,000 at that time, in exchange for "Kevin's" inside law enforcement information.

12. In a DEA 6 dated August 1, 2013, FORCE memorialized the fact that he, acting as Nob, had sent a PGP-encrypted communication advising R.U. that "'Kevin' wanted a 'donation' of bitcoins from R.U., the inference being that the information on the Silk Road investigation is valuable." FORCE falsely stated in the DEA 6 report that R.U. never made the payment, writing "AGENT'S NOTE: DPR [R.U.] made no such payment."

13. In fact, R.U. did make this 525 bitcoin payment to Nob (FORCE). On August 4, 2013, R.U. sent four smaller payments totaling 525 bitcoin from his Silk Road account into a single pass-through account that FORCE controlled.

14. Rather than properly documenting the 525 bitcoin payment and safeguarding it in a government account, FORCE took custody of the bitcoin and deposited them into a pass-through bitcoin address he personally controlled.

15. FORCE moved those bitcoins through several different accounts and then they sat in an account from September 1, 2013 through September 27, 2013, until FORCE moved the amount to his personal account at CampBX, a digital currency exchange. On September 27, 2013, FORCE transferred or caused to be transferred the 525 bitcoins in his own personal account with CampBX to his personal bank account.

### FORCE's Wire Fraud As "French Maid"

16. Nob was the only persona that was discussed in FORCE's official reports, and was the only persona of which others in FORCE's chain-of-command and the federal prosecutor on the Baltimore Silk Road case were aware.

17. Nonetheless, FORCE also developed and used the moniker "French Maid" to communicate with R.U. As "French Maid," FORCE agreed to sell R.U. information about the government's investigation into the Silk Road in exchange for payment.

18. Specifically, between August 26, 2013 and September 14, 2013, "French Maid" (FORCE) and R.U. communicated by private message on the Silk Road server. Some messages were encrypted with PGP keys, but some messages were not encrypted. In the first message in this thread, dated August 26, 2013, "French Maid" wrote to R.U.: "I have received important information that you need to know asap. Please provide me with your public key for PGP. Carl." Hours later, FORCE as "French Maid" sent a follow-up message correcting the prior use of the name "Carl." FORCE did so because he had inadvertently used his real first name when signing off on the previous message.

19. On September 13, 2013, "French Maid" sent R.U. an encrypted message including the subject line "Hope you like."

20. On September 15, 2013, R.U. made a payment totaling 770 bitcoin to "French Maid," (FORCE), worth approximately $98,000 at the time of the payment. The block chain showed that the 770 bitcoin payment was broken up into four separate bitcoin addresses and funneled through a series of pass-through accounts. The block chain further revealed that on September 23, 2013 and September 29, 2013, those four addresses all came together to deposit 770 bitcoins in FORCE's personal account at CampBX.

21. FORCE held this CampBX account in his personal, not official, capacity and linked the CampBX account to his own personal accounts and identifiers, including his personal bank account.

22. Throughout November 2013, FORCE moved a substantial portion of the bitcoin in his CampBX account to his personal account at Bitstamp, a global digital currency exchange. FORCE held his Bitstamp account in his personal and not official capacity and linked the account to his own personal accounts and identifiers.

23. From late 2013 through early 2014, FORCE liquidated more than $500,000 worth of bitcoin from Bitstamp by wiring money into his personal checking account at M&T Bank.

### FORCE's Extortion

24. CoinMKT was a California-based digital currency exchange company that supported trading between Bitcoin and other crypto currencies. FORCE had a two-fold relationship with CoinMKT: he was both a major investor as well as its de facto compliance officer – all while he was employed as a full-time DEA agent who was investigating digital currency users and providers.

25. R.P. was a California resident who held an account at CoinMKT during at least 2013 and 2014. During March 2014, R.P.'s account with CoinMKT contained approximately $37,000 in cash and approximately $297,000 in four forms of different digital currencies.

26. On February 5, 2014, CoinMKT emailed FORCE regarding what it initially believed to be suspicious activity by R.P. – withdrawing $30,000 in three $10,000 increments – and sought direction from FORCE on how to proceed.

27. On February 7, 2014, FORCE instructed a DEA intelligence analyst to run a criminal history check on R.P., stating that the purpose was to uncover illegal activity by R.P. On February 8, 2014, FORCE directed CoinMKT to suspend R.P.'s account and to tell R.P. that the federal government was investigating him for a variety of statutory violations. FORCE added that he would seize the money and do all the paperwork. On February 8, 2014, CoinMKT froze R.P.'s account at FORCE's direction.

28. On February 10, 2014, FORCE, now using his official DOJ email account instead of the personal email account he had previously used to communicate with CoinMKT, served an official subpoena on CoinMKT requesting that it provide all information regarding R.P.

CRIMINAL INFORMATION

29. On February 11, 2014, CoinMKT's CEO contacted FORCE to relay his doubts and concerns about CoinMKT's earlier suspicions concerning R.P. In particular, CoinMKT's CEO advised FORCE that R.P.'s transactions were likely the result of a glitch in the system that was not permitting users to withdraw more than $10,000 worth of currency at a time.

30. On March 1, 2014, R.P. wrote to CoinMKT advising that he had not been able to log into his account. CoinMKT replied to R.P. that his account had been suspended, noting the government subpoena and directing R.P. to contact FORCE.

31. Over the coming weeks, FORCE, acting in his official capacity, directed CoinMKT to seize R.P.'s account. CoinMKT effectuated this seizure by creating an entirely new account with the name "R_seized."

32. On March 12, 2014, CoinMKT emailed FORCE, copying others at the DEA, stating that it had created the "R_seized" account, providing the login and password information, and asking FORCE to advise when to move funds from the R.P. account into the R_seized account. Without copying any of the other recipients of the original message in his reply, FORCE directed CoinMKT to "Transfer them now please."

33. On March 23, 2014, using his official DEA email account, FORCE emailed CoinMKT stating that "we checked the balances this morning [in the R_seized account] and the coins are still not there. Is everything okay?" CoinMKT replied later that same day that they had experienced some logistical issues in effectuating the transfer of digital currency from R.P.'s account to the R_seized account.

34. On March 26, 2014, CoinMKT emailed FORCE stating "the [R.P.] funds should be in your account. We made the move 2 days ago but please confirm on your end that you have received them." FORCE replied, from his official DEA email account with no one carbon copied, "Yes they are in DEA's account now. Thank you very much!"

35. R.P.'s digital currency funds were never transferred to any official DEA account. On April 16, 2014, FORCE transferred them into his own personal account with Bitstamp and subsequently

6
CRIMINAL INFORMATION

1 liquidated them, alongside other funds, into approximately $201,000 U.S. dollars which were then wired
2 to his personal checking account at M&T Bank.

3   36.   Within days of the seizure of the approximately $297,000 in digital currency funds from
4 R.P., FORCE launched his own personal limited liability company dedicated to the investment in and
5 speculation of digital currency, Engedi, LLC.

6 COUNT ONE: (18 U.S.C. § 1956(a) – Money Laundering)

7   37.   The allegations in paragraphs 1 through 36 of this Information are incorporated by
8 reference as if set forth fully here.

9   38.   Throughout late September 2013, in the Northern District of California and elsewhere,
10 the defendant,

11             CARL M. FORCE, a/k/a "French Maid,"

12 knowing that property involved in a financial transaction represented the proceeds of some form of
13 unlawful activity, and which property was in fact the proceeds of specified unlawful activity, namely
14 theft of government property, in violation of 18 U.S.C. § 641, and wire fraud, in violation of 18 U.S.C.
15 § 1343, conducted and attempted to conduct the following financial transactions affecting interstate and
16 foreign commerce, knowing that those transactions were designed in whole and in part to promote the
17 carrying on of, and to conceal and disguise the nature, location, source, ownership, and control of the
18 proceeds of those unlawful activities:

| Date | Amount | Description of Financial Transaction |
| --- | --- | --- |
| 9/27/13 | 525 bitcoin | Deposit of proceeds of theft of government property in violation of 18 U.S.C. § 641 from bitcoin address *1AJGTi3i2tPUg3ojwoHndDN1DYhJTWKSAA* to CampBX account |
| 9/23/13 | 194.9995 bitcoin | Deposit of proceeds of wire fraud in violation of 18 U.S.C. § 1343 from bitcoin address *156RBPqUCw6dxsXHCsJSKsuAC6JUmSRy2* to CampBX account |
| 9/29/13 | 189 bitcoin | Deposit of proceeds of wire fraud in violation of 18 U.S.C. § 1343 from bitcoin address *17p1DgXbvbDm5DQ3zu9vc2q9TzJe9vn5ct* to CampBX account |

7

CRIMINAL INFORMATION

| | | |
|---|---|---|
| 9/29/13 | 154 bitcoin | Deposit of proceeds of wire fraud in violation of 18 U.S.C. § 1343 from bitcoin address *17p1DgXbvbDm5DQ3zu9vc2q9TzJe9vn5ct* to CampBX account |
| 9/29/13 | 154 bitcoin | Deposit of proceeds of wire fraud in violation of 18 U.S.C. § 1343 from bitcoin address *1L9HxpQdakGzQT4o1mTXZ8AqUVEkz9m6xS* to CampBX account |
| 9/29/13 | 160.9985 bitcoin | Deposit of proceeds of wire fraud in violation of 18 U.S.C. § 1343 from bitcoin address 1CJx8u5VCZfCekkzQfMi5NCq5fL6GwrN4n to CampBX account |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (a)(1)(B)(i).

COUNT TWO: (18 U.S.C. § 1512(c)(2) – Obstruction of Justice)

39. Paragraphs 1 through 36 of this Information are incorporated by reference as if set forth fully here.

40. From July 2013 through May 30, 2014, within the Northern District of California and elsewhere, the defendant,

CARL M. FORCE, a/k/a "French Maid,"

and others known and unknown to the Grand Jury, knowingly, intentionally, and corruptly attempted to, and did, obstruct, influence, and impede the following official proceedings: (1) the Baltimore Grand Jury investigation in connection with the Baltimore Silk Road Task Force, and (2) the San Francisco Grand Jury investigation of FORCE and BRIDGES and the Baltimore Silk Road Task Force, by the following acts:

A. Beginning in or about July 2013, FORCE used his official capacity corruptly to obtain bitcoin from the target of his own investigation, namely R.U. To evade detection of that misconduct, he encrypted his communications in a manner designed to prevent their discovery by other law enforcement and/or the Baltimore Grand Jury investigation of R.U. He further converted the bitcoin to his own personal use, thereby limiting the use of that bitcoin to further the Baltimore Grand Jury investigation of R.U. and Silk Road, and impairing the integrity of the evidence that the Grand Jury developed in that investigation;

CRIMINAL INFORMATION

8

B. On May 30, 2014, in connection with the San Francisco Grand Jury investigation, FORCE knowingly made false and fictitious statements to federal prosecutors, Special Agents of the Federal Bureau of Investigation, the Department of Homeland Security Office of Inspector General, and the Internal Revenue Service Criminal Investigation Division, in connection with the San Francisco Grand Jury investigation of FORCE and BRIDGES and the Baltimore Silk Road Task Force, in an effort to prevent the investigation from focusing on him;

All in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

COUNT THREE: (18 U.S.C. § 1951 – Extortion Under Color of Official Right)

41. Paragraphs 1 through 36 of this Information are incorporated by reference as if set forth fully here.

42. From February 2014 through April 2014, within the Northern District of California and elsewhere, the defendant,

CARL M. FORCE, a/k/a "French Maid,"

a public official, obtained money and other property of value that he knew he was not entitled to receive, which was given in return for taking some official action that affected interstate commerce; that is, by obtaining money and property, including bitcoins, not due FORCE or the United States government and to which FORCE was not entitled, from individuals and entities, including R.P. and CoinMKT, with their consent under color of official right.

All in violation of Title 18, United States Code, Section 1951(a).

FORFEITURE ALLEGATIONS: (18 U.S.C. § 982(a)(1) – Money Laundering Forfeiture);
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Obstruction of Justice Forfeiture)

Upon conviction of the offense alleged in Count One of the Information, the defendant,

CARL M. FORCE, a/k/a "French Maid,"

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in any such offense, or any property traceable to such property, including but not limited to the following: a money judgment equivalent to the amount of property involved in the violation of 18 U.S.C §§ 1956(a)(1)(A)(i) and (a)(1)(B)(i):

  a. Any interest in, security of, claim against, or property or contractual rights of any kind in the goods or tangible items that were the subject of the violation;

  b. Any interest in, security of, claim against, or property or contractual rights of any kind in tangible property that was used in the export or attempt to export that was the subject of the violation; and

  c. Any property constituting, or derived from, any proceed obtained directly or indirectly as a result of the violation; and

  d. Any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

  Upon conviction of the offenses alleged in Counts Two through Three of the Information, the defendant,

CARL M. FORCE, a/k/a "French Maid,"

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(c), and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including but not limited to the following: a money judgment equivalent to the amount of property involved in the violation of 18 U.S.C. §§ 1512(c)(2) and 2.

  If any of the property described above, as a result of any act or omission of the defendant:

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to, or deposited with, a third party;

   (c) has been placed beyond the jurisdiction of the court;

   (d) has been substantially diminished in value; or

   (e) has been commingled with other property which cannot be divided without difficulty;

//
//
//

CRIMINAL INFORMATION  10

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

MELINDA HAAG
United States Attorney

/s/ David R. Callaway
DAVID R. CALLAWAY
Chief, Criminal Division

RAYMOND HULSER
Chief, Public Integrity Section

(Approved as to form: /s/ Kathryn Haun )
KATHRYN HAUN
WILLIAM FRENTZEN
Assistant U.S. Attorneys

RICHARD EVANS
Trial Attorney, Public Integrity Section

CRIMINAL INFORMATION     11