Pages 1 - 12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MARIA-ELENA JAMES, MAGISTRATE JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:15-cr-00319-RS |
| ) | |
| SHAUN W. BRIDGES, ) | |
| ) | |
| Defendant. ) | San Francisco, California |
| _____ ) | Thursday, October 15, 2015 |

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

FTR 10:23 a.m. - 10:39 a.m. =  13  minutes total

**APPEARANCES**:

| | |
|---|---|
| For Plaintiff: | United States Department of Justice |
| | Criminal Division |
| | Public Integrity Section |
| | 1400 New York Ave NW, 12th floor |
| | Washington, D.C.  20005 |
| BY: | **RICHARD EVANS** |
| | Assistant United States Attorney |
| | (appearing by telephone) |
| | |
| For Defendant: | Levin and Curlett, LLC |
| | 201 North Charles Street, Suite 2000 |
| | Baltimore, Maryland  21201 |
| BY: | **STEVEN HALE LEVIN, ESQ.** |
| | (appearing by telephone) |
| | |
| Transcribed by: | Leo T. Mankiewicz, Transcriber |
| | leomank@gmail.com |
| | (415) 722-7045 |

|    |                                                                              |
|----|------------------------------------------------------------------------------|
| 1  | <u>Thursday, October 15, 2015.</u>                                           |
| 2  | (Defendant and all counsel participating                                     |
| 3  | by telephone conference.)                                                    |
| 4  | 10:23 a.m.                                                                   |
| 5  | P R O C E E D I N G S                                                        |
| 6  | **THE CLERK:**  Calling criminal action 15-319, U.S.A.                       |
| 7  | versus Shaun Bridges.                                                        |
| 8  | Counsel, please state your appearance for the record.                        |
| 9  | **MR. EVANS:**  Good afternoon, your Honor.  Richard Evans                   |
| 10 | for the United States.                                                       |
| 11 | **THE COURT:**  Good afternoon.                                              |
| 12 | **MR. LEVIN:**  Good morning, your Honor.  Steven Levin on                   |
| 13 | behalf Mr. Shaun Bridges, who is seated to my left.                          |
| 14 | **THE COURT:**  And sir, would you state your name for the                   |
| 15 | record, Mr. Bridges?                                                         |
| 16 | **THE DEFENDANT:**  Shaun Bridges.                                           |
| 17 | **THE COURT:**  And your age, please?                                        |
| 18 | **THE DEFENDANT:**  Thirty-three.                                            |
| 19 | **THE COURT:**  All right.  So I have this on a motion on                    |
| 20 | a revocation of bond request from the government.                            |
| 21 | Can you hear me?                                                             |
| 22 | **MR. LEVIN:**  We can hear -- this is Steve Levin, your                     |
| 23 | Honor.  Mr. Evans and I are looking at each other.  We can hear              |
| 24 | you, but it's -- it's a little muffled.                                      |
| 25 | **THE COURT:**  Okay.  Can you hear me now?                                  |

1     **REMOTE CLERK:**  I'm the courtroom deputy.  I apologize,
2  your Honor, and I'm trying to make adjustments in here as
3  you're speaking, so hopefully it can come in a little bit
4  clearer, but I think you're sounding a little clearer now.
5     **THE COURT:**  Okay.  Can you hear me now?
6     **MR. EVANS:**  Yes, your Honor.
7     **THE COURT:**  Okay.  So the government has requested
8  that I revoke Mr. Bridges' -- the conditions of his release,
9  because apparently, Mr. Bridges had gone to a police department
10 and indicated that he lost his badge or his credentials, his
11 retirement credentials, is that correct?
12    **MR. EVANS:**  That's correct, your Honor.  That's the
13 information that the government received and was one of the
14 bases for the motion that the government filed.  I think
15 technically, I guess, there is competing motions at this time,
16 as counsel for defendant filed a motion last evening requesting
17 continued release and then a supplemental motion an hour or two
18 ago.  So we've kind of got cross-motions at this point.
19    **THE COURT:**  Okay.  What is the supplemental motion
20 that was filed an hour or two ago?
21    **MR. LEVIN:**  I'm sorry, your Honor.  It was a one-page
22 attachment -- it was really just an attachment which reflected
23 the fact that on September --
24    **THE COURT:**  Oh, I see that.  Okay, yes.  All right.
25 Okay, so counsel, it indicates that Mr. Bridges was the victim

1  of a theft, but -- of his credentials, but it appears that he
2  never was retired, a retired law enforcement officer, is that
3  correct?
4          **MR. LEVIN:**  Your Honor, he was retired.  As is set out
5  in our now motion, Mr. Bridges reported a theft of his wallet
6  and a laptop, which occurred, we believe, on Thursday,
7  September 24th.  He went to the Howard County Police Department
8  the following day and met with a young cadet.  We believe she
9  was maybe 18 years old.
10         Mr. Bridges reported that his wallet and laptop had
11 been stolen.  The cadet asked what was in his laptop.  He
12 indicated his credit cards, cash, and business cards and an MSP
13 credential.  And he went on to explain he had been law
14 enforcement for 12 years, he was retired, and that's when he
15 asked for a computer-aided dispatch number, rather than going
16 through the trouble of filing a report, because he didn't
17 anticipate these items would be recovered.  However, he did
18 want to make sure he wasn't held responsible for the -- any
19 unauthorized uses of his credit cards.
20         So the cadet -- and the cadet is the only person who
21 is making an allegation that Mr. Bridges reported the loss or
22 theft of a retirement credential.  He doesn't claim to have had
23 a retirement credential.  He indicated he was retired law
24 enforcement, as is reflected in our exhibits.  He considers
25 himself retired because he's due a pension once he hits the age

1    of 50.
2         **MR. EVANS:**  Well, and your Honor, and the government
3    respond to that, we believe that that information is
4    demonstrably false.  Whether he's entitled to a pension or not,
5    he served three years in the Maryland State Police before
6    moving over to the Secret Service.  He may have spent 12 years
7    in law enforcement.  He resigned his position at the Secret
8    Service as this case unfolded, and has never retired from any
9    law enforcement organization.
10        And the fact that Mr. Bridges made these statements to
11   law enforcement regarding this identity theft -- I mean,
12   there's so many -- the problems with this, again, is that --
13   the unanswered questions that keep popping up with Mr. Bridges.
14        As the Court is likely aware from our motion, when we
15   were before Judge Seeborg at the end of August for the plea
16   hearing, it came to the government's attention, I believe it
17   was the day of the hearing, that Mr. Bridges had been
18   attempting to change his name, his first and last name, as well
19   as his Social Security number, and to shield that information
20   from the database -- law enforcement database, ostensibly
21   because he was the victim of multiple identity thefts, four
22   supposed identity thefts.
23        When asked to discuss them, he indicated, you know,
24   the recent notification from OPM, and I think just about
25   everyone in the courtroom acknowledged that they had gotten a

1  similar e-mail, but I don't think anyone else had sought to
2  change their name and Social Security number.
3       I think this caused Judge Seeborg great concern,
4  because it was done in a time period a month after he had just
5  signed his plea agreement and two months prior to when he was
6  to enter his plea in the Northern District, and as a result of
7  that, I think he was close to having him remanded in custody at
8  that point, but decided to impose slightly lesser constraints,
9  additional requirement, i.e., electronic monitoring and a
10 curfew; I think it's from 10:00 p.m. to 6:00 a.m.
11      In addition, we received -- the only way we found this
12 out was by getting an unsolicited phone call from a court clerk
13 who was trying to figure out if this was the same individual.
14      Now we have an instance where Mr. Bridges supposedly
15 loses his wallet, yet somehow he doesn't lose his driver's
16 license, and he goes into a police station to make a report,
17 doesn't want to file a report, just wants a number, and then
18 starts talking about his credential from the Maryland State
19 Police missing.
20      He ultimately comes back, according to the sequence of
21 events, tries to do it again, and leaves, and then the next day
22 files it electronically.
23      Your Honor, this is an individual who was in charge of
24 the computer crimes portion of the task force here in
25 Baltimore.  This is an extremely savvy individual when it comes

```
 1   to computers.  He could have made the report initially online.
 2   There's no reason -- no reason I can think of to know why he
 3   didn't, but this is just another in a series of things, and
 4   defense counsel, one, in his motion that he filed yesterday,
 5   it's in footnote 1, about the fact that, you know, he -- on the
 6   day he was before you on March 30th when he had his initial
 7   appearance, he notified the government that he legally
 8   possessed four firearms and that he was willing to voluntary
 9   turn those over, and in fact, that was made a condition of his
10   pretrial release, that he surrender his firearms to federal law
11   enforcement, and on the day he did, the following day, on
12   April 1st, he told the agents that while he was surrendering
13   them, it was voluntarily, and that he could legally possess
14   them and intends to find a third party to assume ownership of
15   the weapons.
16            Your Honor, about a month and a half later, we
17   received a letter from a counsel representing Mr. Bridges'
18   wife, who they had just been married this spring, I believe,
19   claiming that she was the lawful owner of the weapons, and that
20   in fact, Mr. Bridges had sold them to her on March 29th, the
21   day before he appeared before you, and attached a bill of sale
22   indicating that the sale was for a dollar for these weapons,
23   one of which was an AR-14 (sic), and there was an expanded
24   magazine as well, and that the only thing that we could surmise
25   from this is, again, this was a back-dated receipt for the sale
```

1   of these weapons to somehow justify the transfer of ownership
2   to -- from Mr. Bridges to his wife.
3           When we pointed out to the wife's counsel that there
4   may be some problems with the transfer of the weapons, whether
5   that was even legal, especially for the AR-15 and the expanded
6   magazine, the issue seemed to die.
7           But it's just one thing after another, your Honor.
8   The government does not feel that it or the Court should trust
9   Mr. Bridges at this time, given all of the things that we see
10  lined up, whether it's the weapons and supposed bogus transfers
11  to other family members, whether it's trying to change his name
12  and Social Security number.
13          And frankly, if he has this identity theft issue, I'm
14  surprised, before he had any interaction with any law
15  enforcement, why he wouldn't, one, contact his attorney, and
16  two, contact the Probation Office just to let them know that he
17  had had some sort of an incident and that he was going to be
18  interacting with some law enforcement agency, whether it be
19  Howard County or State Police or whatever.
20          And the standard is clear under 3143.  The defendant
21  should be remanded into custody after a finding of guilt prior
22  to his sentencing, unless he has demonstrated by clear and
23  convincing evidence that he's not a flight risk or a threat of
24  danger to the community.  We believe that the flight risk is
25  the issue here, and as Mr. Levin pointed out in his filing,

| | |
|---|---|
| 1 | that the defendant's already made restitution to the government |
| 2 | to the tune of almost $500,000, I'd like to remind the Court |
| 3 | that the amount that was stolen that Mr. Bridges pled to was |
| 4 | the fact of over $800,000. |
| 5 | So there's still hundreds of thousands of dollars out |
| 6 | there.  I'm not sure where they are, whether they're in a |
| 7 | bitcoin wallet or whether they're buried under a rock, but |
| 8 | bottom line is, the government has no confidence that |
| 9 | Mr. Bridges is going to show up for his sentencing in the |
| 10 | Northern District of California on December 7th, and because of |
| 11 | that, we would ask that he be remanded in custody at this time |
| 12 | pending his sentencing. |
| 13 | **MR. LEVIN:**  Your Honor, if I may? |
| 14 | **THE COURT:**  Yes. |
| 15 | **MR. LEVIN:**  I'm hesitant to allege misrepresentations |
| 16 | by the government, but the government's very well aware of the |
| 17 | fact that Mr. Bridges stole -- and he's acknowledged -- he |
| 18 | stole approximately $250,000 -- $350,000 of bitcoin, and the |
| 19 | they increase in value, and he thereafter transferred the |
| 20 | $850,000 worth of bit coins. |
| 21 | He paid taxes, your Honor, on the capital gains. |
| 22 | That's, in part, where that money went, and the government's |
| 23 | well aware of that.  He also lost money when bitcoin decreased |
| 24 | in value. |
| 25 | So there is no (indistinct) bitcoins in a wallet |

1  hiding somewhere, and the government well knows this because
2  Mr. Bridges has met with the government and proffered and
3  provided documentation to demonstrate that he paid taxes on
4  those capital gains.
5       So I'm shocked to hear this representation that the
6  government doesn't know what happened to the remaining value of
7  the remaining bitcoins, that it does not --
8       **THE COURT:** Counsel, let me ask you a question. What
9  were the conditions that -- the conditions that Judge Seeborg
10 added?
11      **MR. LEVIN:** That's a curfew, your Honor, from
12 10:00 p.m. to 6:00 a.m., and upon --
13      **MR. EVANS:** Electronic monitoring, as well.
14      **MR. LEVIN:** -- and upon his --
15      **THE COURT:** All right.
16      **MR. LEVIN:** I'm sorry, your Honor.
17      **THE COURT:** Your Honor -- I mean, excuse me, counsel.
18 I think that the Court is concerned about this behavior.
19 I think the government's right that there's something going on,
20 I'm not exactly sure what it is, but Mr. Bridges, rather than
21 take him into custody at this time, I'm going to put him under
22 home confinement. He cannot leave his house except to go to
23 doctor's appointments, to the Court, to see his attorney, and
24 for counseling.
25      **MR. LEVIN:** Yes, your Honor. For your Honor's

1   benefit, and can only (indistinct) to assist in the proceedings
2   today.  Those are the exact conditions that were assigned --
3   I believe those are the exact conditions that were assigned, or
4   set, this Tuesday before the magistrate judge here in
5   Baltimore, your Honor.
6       **MR. EVANS:**  Having the hearing today.
7       **MR. LEVIN:**  Sure, but I'm just saying, for the
8   purposes of paperwork, it may be -- we may be able to sign the
9   same paperwork that was previously prepared.
10      **THE COURT:**  Does Mr. Bridges have a computer
11  currently?
12      **MR. EVANS:**  I'm sorry, your Honor, we missed that
13  question.
14      **THE COURT:**  Does he have a computer currently?
15      **MR. LEVIN:**  Yes, your Honor, I believe he does.
16      **THE COURT:**  And he's not working at this point.
17      **MR. LEVIN:**  He is attempting to obtain regular
18  employment and has not been successful, your Honor.
19      **THE COURT:**  All right.  So at this point, given the
20  closeness of the sentencing, I'm going to order that he have no
21  computer, that he relinquish that to Pretrial Services, and
22  that he have no access to a computer.
23      **MR. EVANS:**  And in addition to the home confinement,
24  your Honor?
25      **THE COURT:**  That's correct.

1       **MR. EVANS:**  Okay, and then it makes sense to me, since
2   this matter was actually pending before the Northern District,
3   that the order issue from your court, your Honor.
4       **THE COURT:**  Okay, then we will get an order out.
5       **MR. LEVIN:**  Your Honor, thank you for your
6   consideration.  Can we include in that order that Mr. Bridges
7   be permitted to cut his grass?  He literally has no money and
8   can't afford to hire someone.  His wife works full-time.
9   I just want to be sure if the home confinement included the
10  ability to go outside --
11      **THE COURT:**  To mow his lawn?  No.  He has to stay
12  under the roof of his house.
13      **MR. LEVIN:**  Thank you, your Honor.
14      **MR. EVANS:**  Thank you, your Honor.
15      **THE COURT:**  Okay, thank you.
16      **THE CLERK:**  I'm going to disconnect now.
17                                                      10:39 a.m.
18                              ---o0o---

**CERTIFICATE OF TRANSCRIBER**

I, Leo Mankiewicz, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____ 03/21/2016
Signature of Transcriber          Date